[No. 9546.   Department One.   May 24, 1912.]

W. R. AUSTIN *et al.*, *Appellants*, v. WASHINGTON WATER POWER COMPANY, *Respondent.*[1]

CARRIERS—INJURIES TO PASSENGERS—NEGLIGENCE—SPEED AT CURVES —CAUSE OF ACCIDENT—EVIDENCE—QUESTION FOR JURY.  In an action by a passenger, who rode standing at the rear of a crowded street car vestibule containing fifteen or more persons, for injuries sustained by being thrown back against the controller when the car rounded a curve at an excessive speed, the fact that under the natural laws of falling bodies, inanimate objects would be thrown to the side and not back, does not preclude a recovery, but the question is for the jury; since it was not impossible that on rounding a curve at an excessive speed, the crowded passengers in efforts to regain equilibrium, should surge back upon the plaintiff in the direction claimed.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered December 29, 1910, dismissing an action for injuries to a passenger on a street car, upon granting a nonsuit.   Reversed.

*Nuzum & Nuzum*, and *Geo. H. Armitage*, for appellants.

*Post, Avery & Higgins*, for respondent.

FULLERTON, J.—The respondent owns and operates a street car system, in the city of Spokane.   In the evening of September 25, 1909, the appellants entered a car of the respondent, for the purpose of riding as passengers from the business center of the city to their home in the suburbs thereof.   The car was so crowded with passengers that the appellants were unable to obtain seats, and rode standing in the vestibule of the car, with some fifteen other persons.   The appellant Martha E. Austin stood at the extreme rear of the car, next to the controller, with her left side or hip against it.   As the car proceeded on its way, it rounded a curve in passing from one street into another running at right angles

[1]Reported in 123 Pac. 775.

thereto.  In making the turn, the people in the vestibule in front of Mrs. Austin were thrown back against her, pressing her against the controller and injuring her.

The allegation in the complaint with reference to the cause of the injury was as follows:

"That the plaintiff, Martha E. Austin, was standing with her back next to the controller on said car in said rear platform, as aforesaid, and that when the said car of said defendant corporation rounded the turn at the corner of Division street and Riverside avenue, the said defendant corporation, through its agents and servants, the motorman and conductor on said car, so carelessly and negligently managed said car that the same was taken around said curve at an excessive rate of speed, thereby causing the crowd in the vestibule of said car to surge backward, and against the plaintiff, Martha E. Austin, throwing the said Martha E. Austin against the controller on said car, the said controller striking her in the back over the sacrum and injuring the plaintiff, Martha E. Austin, as hereinafter alleged."

At the trial, Mrs. Austin gave the following account as to the manner in which the injury occurred:

"Q.  When you got to Riverside and Division, Mrs. Austin, just as the car hit the curve, how fast was the car going?  A.  Well, it was going faster than when I had rode when it was loaded so.  Q.  Faster than what?  A.  Faster than I had rode on, loaded so.  Q.  When you hit the curve what, if anything, happened with the crowd?  A.  Well, it throwed them all back on to me and jammed me against the controller.  Q.  Are you able to state what occurred to you when you hit the controller, Mrs. Austin, with reference to going backwards, or anything of that sort, or do you know what occurred?  A.  After I had fell I didn't know much of anything; didn't know anything from then until I found myself laying on the ground at Nora."

Her husband and coplaintiff gave the following account on direct examination:

"Q.  Now, Mr. Austin, when you got up Division street, what was the speed of the car?  A.  Why, I should judge about ten or twelve miles an hour from the way it was going.

Q. And when you hit the Division street curve, or came into it, what, if anything, happened to the car?  A. Well, they hit the curve with such force, when the hind trucks hit the curve it swung the car around with such force it throwed all of us, standing in the back end, backward and jammed my woman across the controller.  There was two or three men in front of her that came back against her."

Cross-examination:

"Q. And you say that when the hind trucks of that car struck the curve at Division street, that then the whole crowd in the vestibule went back, pushing your wife on the controller?  A. Yes, sir.  Q. At that particular moment?  A. Yes, sir."

At the conclusion of the appellants' case in chief, the trial judge granted a motion for a nonsuit, on grounds stated by himself in the following language:

"Gentlemen of the jury, on yesterday when the plaintiffs closed their testimony, the defendant challenged the sufficiency of plaintiffs' evidence and moved for judgment.  I didn't rule upon that motion at that time but reserved ruling until this morning.  The ground of that motion was that, under natural law of falling bodies, it would be impossible for the testimony of Mr. and Mrs. Austin to be true, namely that the car going at great speed around a curve would throw the persons, passengers standing upon the rear platform, back—the defendant contending that the natural law would be that those persons standing upon the rear platform would go to the side.  As I say I reserved ruling upon that motion until now.  Last evening, after the adjournment of court, the plaintiff, some of his witnesses, attorneys for both sides, myself and some others, made an experiment upon one of the cars around this corner, and since then I have myself made other experiments upon other car lines; and in addition have consulted with a teacher of physics in the high school, and I am convinced, beyond all doubt, from these experiments, and this information, that the natural law is as contended for by the defendant—that is to say, that a body would fall to the side, and not to the rear when a car was moving rapidly around a corner, as is alleged in the pleadings, and as is shown by the evidence.  For that reason I shall

have to grant this motion to the defendant, and enter judgment for the defendant in this case."

Judgment to the effect that the appellants take nothing by their action, and for costs in favor of the respondent, was thereupon entered. This appeal followed.

It will be noticed, from the remarks of the trial judge which we have quoted, that he does not deny that the appellant was injured in the manner alleged in her complaint—that is to say, by the persons standing in the vestibule of the car in front of her surging back upon her; nor does he deny that it was an act of negligence of the respondent to run its car around the curve at a speed of ten or twelve miles per hour; but holds, rather, that there is no relation between the injury suffered and the negligence alleged and proven; that, by the laws of physics, it is an impossibility for a person riding in a car around a curve to be thrown backwards towards the rear end of the car; but, on the contrary, a person so riding would be thrown towards the side of the car in the direction of the car's original motion.

We cannot accept this theory as conclusive against the appellants' right to recover. The respondent is a quasi-public corporation, engaged in the business of carrying passengers for hire. It is bound to exercise towards its passengers the highest degree of care consistent with the successful operation of its business. The injured appellant was a passenger on one of its cars, and while so a passenger, the respondent ran its car at an excessive rate of speed, and concurrent therewith the appellant mentioned was injured. These facts alone, it seems to us, sufficiently connect the negligent act and the injury to require the submission of the question whether the one was the cause of the other to the jury. But if it were otherwise, we cannot think the court's reasoning scientifically accurate. It may be that, if a street car should proceed in a straight line to the junction of a street, turn suddenly a quarter of the way around, as if on a pivot, and stop, the passengers therein would be thrown towards the

side of the car in the direction in which the car was going prior to making the turn. But this car did not perform in that manner. On reaching the curve, there was no stop or slacking in its speed. It proceeded on in a new direction. The passengers were acted upon, as it were, by two forces, the one in the direction of the original motion of the car, and the other opposite to the changed direction of the car; and under natural laws, they would be thrown in some direction which is the resultant of these two forces—that is, neither directly to the side of the car nor directly backwards, but in some direction diagonally between the two. "Two or more forces may act on a body at the same time. . . . In such cases each force produces an acceleration independently of the action of the other forces, and the body travels in some path with a definite acceleration, which is the resultant of the accelerations produced by the separate forces." (Duff's, A Textbook of Physics.) This being true, it is of course not impossible that a woman standing at the back end of a crowded car could be hurt by having other persons, who occupied a more forward position in the car, thrown against her as the result of an excessive speed of the car around a curve.

But considerations of this kind, however applicable they may be when the action of inanimate objects is the subject of inquiry, have but little application to the conduct of human beings under similar conditions. Unlike inanimate objects, human beings have a power of motion independent of the motion of the car in which they are riding, and constantly exert this power of motion when riding to keep themselves in adjustment with the changing movements of the car. The effect a given condition would have upon an inanimate object riding in a car is not, therefore, a very satisfactory test with which to measure the effect of the condition upon human beings. It could be possible, and indeed it is more than probable, that the action of a number of inanimate objects—say boxes or barrels carried swiftly around a curve—would be

altogether different from that of a number of human beings carried around the same curve; that, while the one, in obedience to the law of natural forces, would be thrown in a direction diagonally to the side and rear of the car, the other might be thrown directly to the rear owing to the independent force put forth by them to regain an equilibrium lost by the changing direction in the forward movement of the car. It does not follow, therefore, that, because an injured passenger alleges an improbable ground as the cause of his injury, when tested by the action of inanimate objects, it is an improbable ground when the conduct of persons is the subject of the inquiry.

We think the judgment should be reversed, and the cause remanded for a new trial. It is so ordered.

DUNBAR, C. J., PARKER, and GOSE, JJ., concur.